# 13-649-CR

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

➤➤◄◄

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

HEATHER BLISS,

*Defendant-Appellant.*

———————

*On Appeal from the United States District Court
for the District of Connecticut (New Haven)*

## BRIEF AND SPECIAL APPENDIX
## FOR DEFENDANT-APPELLANT

LAW OFFICES OF RANDALL D. UNGER
*Attorneys for Defendant-Appellant*
42-40 Bell Boulevard, Suite 302
Bayside, New York 11361
718-279-4500

TABLE OF CONTENTS

TABLE OF AUTHORITIES....................................................................    iii

PRELIMINARY STATEMENT..................................................................    1

STATEMENT OF JURISDICTION...........................................................    2

QUESTIONS PRESENTED.......................................................................    2

STATEMENT OF THE CASE....................................................................    2

      The Charges..................................................................................    2
      The Plea Agreement.....................................................................    3
      The Guilty Plea & Cooperation Agreement...................................    4
      The Presentence Report................................................................    6
      The Presentence Memoranda.........................................................    7
      The Sentencing..............................................................................    10

SUMMARY OF THE ARGUMENT.........................................................    12

ARGUMENT:

POINT I

        SINCE THE LOSS AMOUNT THAT DROVE THE
        APPELLANT'S SENTENCE WAS NEITHER
        ADMITTED BY THE APPELLANT NOR
        ESTABLISHED BEYOND A REASONABLE
        DOUBT, THE RESULTING SENTENCE
        VIOLATED HER SIXTH AMENDMENT RIGHTS......    13

i

POINT II

THE DISTRICT COURT'S CALCULATION THAT
A LOSS OF $4,260,008.40 WAS ATTRIBUTABLE
TO THE APPELLANT'S OFFENSE WAS
ERRONEOUS. ACCORDINGLY, THE SENTENCE
WAS PROCEDURALLY UNREASONABLE...,...........   19

POINT III

THE SENTENCE OF 30 MONTHS'
IMPRISONMENT WAS PROCEDURALLY AND
SUBSTANTIVELY UNREASONABLE BECAUSE
THE DISTRICT COURT FAILED TO PROPERLY
CONSIDER THE APPELLANT'S EXTRA-
ORDINARY FAMILY CIRCUMSTANCES..................   24

CONCLUSION...........................................................................   33

CERTIFICATION

## TABLE OF AUTHORITIES

Cases

Alleyne v. United States, 133 S. Ct. 2151 (2013).....................................  12, 17

Apprendi v. New Jersey, 530 U.S. 466 (2000)........................................  14, 17

Cunningham v. California, 549 U.S. 270 (2007).....................................  14

Freeman v. United States, 564 U.S. __, 131 S. Ct. 2685 (2011)..............  16

Gall v. United States, 552 U.S. 38 (2007)..............................................  15, 25
                                                                                         30

Kimbrough v. United States, 552 U.S. 85 (2007)....................................  32

Peugh v. United States, 133 S. Ct. 594 (2013)........................................  12,
                                                                                         15-17

Rita v. United States, 551 U.S. 338 (2007).............................................  15, 26

United States v. Ahders, 622 F.3d 115 (2d Cir. 2010)............................  21

United States v. Alba, 933 F.2d 1117 (2d Cir. 1991)..............................  26

United States v. Booker, 543 U.S. 220 (2005)........................................  14, 16
                                                                                         26-27

United States v. Broxmeyer, 699 F.3d 265 (2d Cir. 2012).......................   18

United States v. Cavera, 550 F.3d 180 (2d Cir. 2008) (en banc)............   18, 24
                                                                              30-31

United States v. Corsey, __ F.3d __, 2013 U.S. App.
    LEXIS 14897 (2d Cir. 2013)...........................................................   26

United States v. Cunningham, 429 F.3d 673 (7th Cir. 2005)....................   26

United States v. Fernandez, 877 F.2d 1138 (2d Cir. 1989).....................   7, 10

United States v. Fernandez, 443 F.3d 19 (2d Cir. 2006)........................   25

United States v. Galante, 111 F.3d 1029 (2d Cir. 1997)..........................   27

United States v. Garcia, 413 F.3d 201 (2d Cir. 2005).............................   14

United States v. Johnson, 924 F.2d 124 (2d Cir. 1992)..........................   26, 29

United States v. Mellen, 393 F.3d 175 (D.C. Cir. 2004)........................   24

United States v. Miranda, 505 F.3d 785 (7th Cir. 2007)..........................   27

United States v. Olis, 429 F.3d 540 (5th Cir. 2005)..................................   20

United States v. Rutkoske, 506 F.3d 170 (2d Cir. 2007)........................   19

United States v. Schroeder, 536 F.3d 746 (7th Cir. 2008).......................   29-30

United States v. Sindima, 488 F.3d 81 (2d Cir. 2007)............................   30

United States v. Singletary, 458 F.3d 72 (2d Cir. 2006)........................   14

United States v. Studley, 47 F.3d 569 (2d Cir. 1995).............................   21, 23

United States v. Turk, 626 F.3d 743 (2d Cir. 2010)................................   20

iv

<u>United States v. Whitley</u>, 503 F.3d 74 (2d Cir. 2007)............................. 25

<u>Statutes & Other Authorities</u>

U.S. Const. Amend. VI.............................................................. 13-14
17, 19

18 U.S.C. § 371...................................................................... 1, 3
13

18 U.S.C. § 3231.................................................................... 2

18 U.S.C. § 3553 (a)............................................................... *passim*

28 U.S.C. § 1291.................................................................... 2

U.S.S.G. § 1B1.3.................................................................... 20-21

U.S.S.G. § 2B1.1.................................................................... 3, 6
12, 13

U.S.S.G. § 3E1.1.................................................................... 3, 6

U.S.S.G. § 5E1.2.................................................................... 4

U.S.S.G. § 5H1.6.................................................................... 7, 26

U.S.S.G. § 5K1.1.................................................................... 5, 9,
11

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
---------------------------------------------------x
UNITED STATES OF AMERICA,

                    Appellee,

                                      Dkt. No. 13-649-cr

   -against-


HEATHER BLISS,

                    Defendant-Appellant.

---------------------------------------------------x


PRELIMINARY STATEMENT

         Heather Bliss (hereinafter the "appellant") appeals from a final judgment of the United States District Court for the District of Connecticut, dated February 12, 2013, convicting her, following the entry of her guilty plea, of conspiracy to commit wire fraud in violation of 18 U.S.C. § 371.  Upon her conviction, the appellant was sentenced to a term of imprisonment of 30 months, to be followed by a term of supervised release of three years (Hon. Janet C. Hall).  The appellant's motion for bail pending this appeal was denied and she is currently incarcerated pursuant to the within judgment of conviction.

## STATEMENT OF SUBJECT MATTER
## & APPELLATE JURISDICTION

The district court's jurisdiction was pursuant to 18 U.S.C. § 3231.  A timely notice of appeal was filed.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## QUESTIONS PRESENTED

1.  Whether the district court erred when it increased the appellant's sentencing range based upon facts that were neither admitted nor proven beyond a reasonable doubt.

2.  Whether the district court erred when it determined that the loss attributable to the appellant's offense exceeded $4,000,000.

3.  Whether the district court failed to give adequate consideration to the appellant's extraordinary family circumstances.

## STATEMENT OF THE CASE

The Charges

The indictment charged that the appellant, acting at the bidding of her husband and co-conspirator William Trudeau, Jr., defrauded federally insured financial institutions and mortgage lenders of more than $2,000,000 from 2001 to

2008. For the most part, the appellant was alleged to have signed a number of documents in order to secure real estate loans for transactions which her husband initiated.

Trudeau proceeded to trial. At that trial, the government portrayed him as the mastermind who had orchestrated the various lending schemes with which he was charged. The jury convicted Trudeau of one count of wire fraud and one count of conspiracy to commit various mortgage frauds, while acquitting him of seven substantive offenses. He was sentenced to 188 months' imprisonment[1]

The Plea Agreement

On July 30, 2010, prior to her husband's trial, the appellant entered into a plea agreement with the government (A25). Pursuant to that agreement, the appellant agreed to plead guilty to a one-count substitute information (A18) charging her with conspiracy to commit wire fraud in violation of 18 U.S.C. § 371. With respect to the applicable sentencing guideline range, the government asserted that it "believes defendant's base offense level under U.S.S.G. § 2B1.1 is 6. That level is increased by sixteen levels under U.S.S.G. § § 2B1.1(b)(1). Two levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, as noted above, resulting in

---

[1]Trudeau's appeal is currently pending before this Court under Docket No. 13-769.

3

a total offense level of 20.  A total offense level 20 with a criminal history category I, which the parties calculate the defendant to be, results in a range of 33 to 41 months of imprisonment (sentencing table) and a fine range of $7,500 to $75,000, U.S.S.G. § 5E1.2(c)(3).  The defendant disagrees with this calculation and reserves the right to present an alternate loss calculation to the Court" (A27).

As to her right to appeal, the appellant agreed "not to appeal or collaterally attack in any proceeding ... the conviction or sentence imposed by the Court if that sentence does not exceed thirteen months [of imprisonment]" (A27-A28).

The Guilty Plea & Cooperation Agreement

On the same day she entered into the plea agreement, the appellant appeared before United States District Judge Hall to plead guilty to the substitute information.  Prior to the entry of her guilty plea, the appellant acknowledged that she was entering into a cooperation agreement with the government and agreed to provide whatever information the government asked of her in connection with the investigation into the fraudulent activities in which she was involved.  However, the government agreed that due to the marital communication privilege, which her husband was unwilling to waive, the appellant would not be required to testify against

4

her husband Trudeau, but would be required to disclose any information she knew about his activities. In return, the government agreed to submit a motion pursuant to U.S.S.G. § 5K1.1 detailing the appellant's assistance (A34-A52).

In the course of the plea allocution, the prosecutor set forth the details of the appellant's offense. He asserted that the appellant had secured a mortgage for a property at 6 Sylvan Road South in Westport, Connecticut and had included certain income in the mortgage application that she had received from a business she owned. Over the next 60 days, she purchased and submitted mortgage applications for three other properties in Westport: 91 Saugatuck Avenue, 95 Saugatuck Avenue 9 Fragrant Pines. In the mortgage applications for those properties, she did not disclose that she had a mortgage on the 6 Sylvan South Road property and claimed that she was only renting that property. The appellant admitted that "[t]he loan application for 9 Fragrant Pines did not disclose the mortgages on 6 Sylvan Road and 91 and 95 Saugatuck. I had become increasingly uncomfortable about the non-disclosure of 6 Sylvan Road when the mortgage application was submitted on 91 and 95 Saugatuck. By the time the Fragrant Pines application got submitted, I knew this wrong even though I had been assured by the mortgage broker if it wasn't on my credit report, the lender didn't care, but I take responsibility for this." In response to further questioning by the district court, she also admitted that other people were involved

5

in those activities with her (A52-A92). At no time during the change of plea proceeding was there any discussion of any losses incurred by any institutions as a result of the appellant's conduct.

The Presentence Report

Following the entry of her guilty plea, the appellant was interviewed by the Department of Probation and a presentence report ("PSR") was prepared and submitted to the district court. The Department of Probation calculated the appellant's base offense level as 6 pursuant to U.S.S.G. § 2B1.1(a)(2). An 18-level increase was recommended based on an alleged loss of $6,590,552, a figure that included a $38,700 loss for the 91 Saugatuck property; a $129,500 loss for the 9 Fragrant Pines property; a $238,500 loss for the 87 Saugatuck property; a $451,952 loss for the 88 Riverside Road property; a total of $1,032,000 in losses on various blanket mortgages and a $3,500,000 loss resulting from attorney and co-conspirator Joseph Kriz's thefts from his IOLTA account. A two-level increase was also recommended under U.S.S.G. § 2B1.1(b)(2)(A)(i) because the offense involved ten or more victims, as well as a two-level increase pursuant to U.S.S.G. § 2B1(b)(15)(A) based on the appellant's alleged receipt of more than $1,000,000 from one or more financial institutions. With a two-level decrease for acceptance of responsibility

6

pursuant to U.S.S.G. § 3E1.1(a), the Department of Probation calculated the appellant's total offense level as 26, yielding an advisory Guidelines range of 63-78 months' imprisonment. However, because the statutory maximum sentence for the offense was five years, the Guidelines range was calculated as 60 months.

In addition, the Department of Probation set forth several factors that could warrant a downward departure from the Guidelines range including the need to give effect to the terms of the plea agreement pursuant to the holding in United States v. Fernandez, 877 F.2d 1138 (2d Cir. 1989); the possibility that the offense level substantially overstated the seriousness of the offense; the appellant's extraordinary family ties and responsibilities pursuant to U.S.S.G. § 5H1.6, and the consideration that a Guidelines sentence would be greater than necessary to comply with the statutory purposes of sentencing pursuant to 18 U.S.C. § 3553(a).

The Presentence Memoranda

In a letter dated January 9, 2013 and addressed to the Department of Probation, defense counsel asserted that the only loss caused by the appellant's offense was $38,700, the total loss attributed to the properties at 91 Saugatuck Avenue and 95 Saugatuck Avenue. Defense counsel argued that there was no loss with respect to the 9 Fragrant Pines property because the $129,500 second mortgage

that was given to New Century had been paid in full.  As to the property at 87 Saugatuck Avenue, defense counsel noted that the appellant's guilty plea did not involve that property and that there was no evidence that the appellant had engaged in any impropriety in the purchase of that property.  As to the property at 88 Riverside Road, defense counsel noted that there was no allegation that the appellant played any role in the transaction relating to that property.  Defense counsel further argued that the appellant was not responsible for the losses allegedly attributable to the blanket mortgages or for Joseph Kriz's thefts from his IOLTA account (A93-A96).

In a pre-sentencing memorandum dated January 30, 2013, defense counsel reiterated his assertion that the only loss that should be attributed to the appellant was $38,700.  In arguing that a sentence of incarceration would be inappropriate, defense counsel noted that all of the appellant's acts were done at the behest of her husband who had masterminded all of the transactions in question; that the appellant had assisted the government in their investigation to the best of her ability, and that the appellant's three young daughters, ages nine years, five years and 18 months, would suffer enormous emotional hardship since it was probable that their father, William Trudeau, Jr., would be sentenced to a lengthy term of imprisonment following his trial conviction, leaving the appellant as the only parent who could provide for and raise the three young girls (A97-A111).

8

In a memorandum dated February 6, 2013, pursuant to U.S.S.G. § 5K1.1, the government noted that the appellant had provided timely and substantial assistance regarding her own illegal activities and those of others. Specifically, the appellant provided information that led directly to the prosecution of attorney John Bryk who then pled guilty and testified as a cooperating witness at the appellant's husband's trial and thereby "played a role in the conviction of William Trudeau, Jr." (A112-A116). However, the government expressed reservations about the appellant's conduct because she had continued to act under the influence of her husband even after she agreed to cooperate (A112-119).

In a pre-sentencing memorandum dated February 7, 2013, the government essentially adopted the Department of Probation's loss calculations and Fernandez departure recommendation, suggesting that a sentence of between 33 and 41 months' imprisonment would be appropriate. In support of that recommendation, the government argued that although the appellant had "acted under the influence of her husband Trudeau" in committing her offense, she should be "held responsible for her own actions, especially since she has been on notice since at least her first conviction in 2008 that Trudeau has no problem leading her into criminal conduct" (A120-A131).

The Sentencing

   The appellant and her husband appeared for sentencing on February 12, 2013.  During the lengthy proceeding that ensued, the district court endeavored to calculate the applicable Guidelines range for both Trudeau and the appellant.  The bulk of that endeavor involved the determination of the loss attributable to Trudeau and his applicable Guidelines range (A137-A213).  Following extended colloquy, the district court determined that the loss attributable to Trudeau was $4,260,008.40 (A205).  After a much briefer colloquy, the district court determined that the loss attributable to the appellant was the same as her husband's despite the court's acknowledgment that there were "some instances where mortgages given by Ms. Bliss come after the fact of the advancement of the funds that end up being fraud losses for these victims" (A213-A225).  After adopting the PSR recommendations that her offense involved ten or more victims; that she had gross receipts of more than one million dollars from one or more financial institutions, and that she had accepted responsibility, the district court determined that the appellant's total offense level was 26.  However, as the PSR suggested, to give effect to the appellant's plea agreement, a downward departure pursuant to United States v. Fernandez, 877 F.2d 1138 (2d Cir. 1989) was applied, resulting in a total offense level of 20, resulting in a Guidelines range of 33 to 41 months' imprisonment (A212-A234, A271-A272).

Before the imposition of sentence, the appellant's father addressed the district court and explained the difficult arrangements that would be required to care for his daughter's three young daughters (A279-A281). The appellant then addressed the district court and expressed her deep remorse for her offense and the heart break that would result if she were separated from her daughters (A283). When the district court questioned the prosecutor about "the strangest 5k motion" it had ever seen, he responded that while the appellant had provided substantial assistance that had led to the prosecution and conviction of co-conspirator Bryk, she appeared to be "matter of fact" during her discussions with the government (A283-A285). Defense counsel insisted that the appellant had done everything within her power to assist the government and that she had given truthful and comprehensive information, but that the extent of her assistance was limited due to Trudeau's refusal to waive the marital communications privilege which had prevented the government from using the appellant's assistance more than it had (A285-A288).

In imposing sentence, the district court granted the government's § 5K1 motion but denied the motion for a downward departure due to the appellant's family circumstances, noting, "I understand that this is going to have enormous impact on Mrs. Bliss's children. There's no question in my mind about that. But that's the consequence of the conduct that she engaged in" (A288-A289). The district court

11

then sentenced the appellant to 30 months' imprisonment, to be followed by a term of supervised release of three years (A302-A303).

## SUMMARY OF THE ARGUMENT

The appellant, the mother of four young daughters, was sentenced to serve a term of imprisonment of 30 months for an offense that the district court and the government acknowledged was initiated and directed by her husband. Every fraudulent document that the appellant signed was at the direction of her husband and there was evidence presented that in a number of instances, she attempted to resist her husband's directives.

The sentence was procedurally flawed in several ways. First, it reflected judicial findings of loss that were neither admitted by the appellant nor established beyond a reasonable doubt. Pursuant to the recent Supreme Court decisions in Alleyne v. United States, 133 S. Ct. 2151 (2013) and Peugh v. United States, 133 S. Ct. 594 (2013), those findings violated the appellant's Sixth Amendment rights. Second, the district court failed to conduct a proper calculation of the loss amount attributable to the appellant pursuant to U.S.S.G. § 2B1.1. And third, in determining the sentence, the district court failed to give appropriate consideration to the factors contained in 18 U.S.C. § 3553 (a) and in particular, failed to give appropriate

consideration to the appellant's extraordinary family circumstances.  For these reasons, the appellant's sentence was unreasonable.

## ARGUMENT

## POINT I

### SINCE THE LOSS AMOUNT THAT DROVE THE APPELLANT'S SENTENCE WAS NEITHER ADMITTED BY THE APPELLANT NOR ESTABLISHED BEYOND A REASONABLE DOUBT, THE RESULTING SENTENCE VIOLATED HER SIXTH AMENDMENT RIGHTS.

Pursuant to her guilty plea, the appellant was convicted of conspiracy to commit wire fraud in violation of 18 U.S.C. § 371.  Under U.S.S.G. § 2B1.1(a)(2), her base offense level was 6.  But with a finding that her offense involved a loss of more than $2,500,000, her offense level was increased by 18 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(J).  This finding, along with other adjustments, had the effect of yielding a total offense level of 26, which in turn, resulted in a Guidelines range of 33 to 41 months' imprisonment.

It is submitted that since the appellant never admitted the amount of the loss caused by her offense either in her plea agreement or at any subsequent time, and since that amount was not proven beyond a reasonable doubt, the judicial

13

determination that the loss amount was $4,260,008.40 violated her Sixth Amendment rights and constituted procedural error. The sentence must therefore be vacated.

In <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000), the Supreme Court held that the Sixth Amendment requires all "facts that increase the prescribed range of penalties to which a criminal defendant is exposed" to be submitted to a jury and proved beyond a reasonable doubt. Following the decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005), which held that the Sentencing Guidelines were advisory rather than mandatory, the Supreme Court and this Court have held that judicial fact finding as it relates to sentencing determinations does not violate a defendant's Sixth Amendment rights. <u>Cunningham v. California</u>, 549 U.S. 270, 285 (2007) (noting that there had been "no disagreement among the [*Booker*] Justices ... that the Federal Guidelines would not implicate the Sixth Amendment were they advisory"); <u>United States v. Singletary</u>, 458 F.3d 72, 79-80 (2d Cir. 2006) ("judicial fact finding under the advisory Guidelines does not offend the Sixth Amendment"); <u>United States v. Garcia</u>, 413 F.3d 201, 220 n. 15 (2d Cir. 2005) ("Judicial authority to find facts relevant to sentencing by a preponderance of the evidence survives *Booker*").

However, even though <u>Booker</u> made it clear that the Sentencing Guidelines were not mandatory, the Supreme Court has repeatedly emphasized their

14

importance in determining what constitutes a reasonable sentence. Thus, <u>Rita v. United States</u>, 551 U.S. 338, 127 S. Ct. 2456, 2465 (2007), the Court instructed that a sentencing judge should "normally begin by considering the presentence report and its interpretation of the Guidelines". Similarly, in <u>Gall v. United States</u>, 552 U.S. 38, 128 S. Ct. 586, 596 (2007), the Court instructed that in all sentencing proceedings, "the Guidelines should be the starting point and the initial benchmark". And in a recent case decided by the Court, the continuing impact of the Guidelines was reaffirmed.

In <u>Peugh v. United States</u>, 569 U.S. __, 133 S. Ct. 2072 (June 10, 2013), the defendant was sentenced for his offenses under the 2009 version of the U.S. Sentencing Guidelines rather than the 1998 version in effect at the time of his offenses. As a result, the defendant was subjected to and received a much lengthier sentencing range than would have been the case if the earlier version of the Guidelines had been applied. After the United States Court of Appeals for the Seventh Circuit rejected the defendant's claim that application of the 2009 version of the Guidelines violated the *Ex Post Facto* Clause, the Supreme Court reversed that decision and remanded the case for resentencing. In so ruling, the Court reiterated its holding in <u>Gall</u> that "the Guidelines should be the starting point and the initial benchmark" in all sentencing proceedings. <u>id</u>. at 2080. However, the Court went

15

further when it described the Guidelines as "the lodestone of sentencing", id. at 2084, observed that "sentencing decisions are anchored by the Guidelines", id. at 2083, and observed further that "if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, *then the Guidelines are in a real sense the basis for the sentence.*", quoting Freeman v. United States, 564 U.S. __ , 131 S. Ct. 2685, 2692 (2011).

Moreover, in Peugh, the Supreme Court rejected the government's argument that no constitutional violation resulted from the use of a post-offense version of the Guidelines because the Guidelines "lack[ed] sufficient legal effect to attain the status of a 'law'". id. at 2085.  The Court held that "It is simply not the case that the Sentencing Guidelines are merely a volume that the district court reads with academic interest in the course of sentencing" id. at 2087.  And to emphasize its conclusion that the Guidelines still played a central role in sentencing decisions, the Court cited United States Sentencing Commission statistics showing that even after Booker, "district courts have in the vast majority of cases imposed either within-Guidelines sentences or sentences that depart downward from the Guidelines on the Government's motion" and that "[i]n less than one-fifth of cases since 2007 have district courts impose above-or below-Guidelines sentences absent a Government motion." id. at 2084.

16

One week after the decision in Peugh was rendered, the Supreme Court issued its decision in Alleyne v. United States, 570 U.S. __, 133 S. Ct. 2151 (2013). In Alleyne, the Court extended its ruling in Apprendi, which had held that any "facts that increase the prescribed range of penalties to which a criminal defendant is exposed" are elements of the crime, id. at 490, and held that facts that increase mandatory minimum sentences must be submitted to a jury.  In so ruling, the Court made it clear that "the principle applied in *Apprendi* applies with equal force to facts increasing the mandatory minimum".  id. at 2160.

Reading the holdings in Alleyne and Peugh in conjunction, there is a strong basis for concluding that a sentencing judge's determination of Guidelines enhancements by a mere preponderance of the evidence violates a defendant's Sixth Amendment rights.  Although the holding in Peugh dealt with an *ex post facto* challenge rather than a Guidelines enhancement, the Supreme Court's recognition of the central role that the Guidelines continue to play in determining sentences, coupled with its pronouncement in Alleyne that it is "impossible to disassociate the floor of a sentencing range from the penalty affixed to the crime", leads inexorably to the conclusion that the Sixth Amendment requires that all facts that fix the penalty range of a crime must be found beyond a reasonable doubt by a jury, or admitted by a defendant.

17

Of course, the conclusion that a Guidelines enhancement must be established beyond a reasonable doubt does not deprive a sentencing judge of his or her discretion in determining a defendant's sentence. Since a sentencing judge is also required to consider the factors contained in 18 U.S.C. § 3553 (a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant", considerable discretion remains in the hands of the sentencing judge when deciding the proper punishment for an offender and a particular crime. United States v. Cavera, 550 F.3d 180, 188 (2d Cir. 2008) (en banc). Accordingly, in this case, if the district court had determined that the appellant's total offense level was 6, but that the nature and circumstances of the offense and the history and characteristics of the appellant warranted a more severe punishment than the applicable Guidelines range provided, and the district court had explained that decision, it would be difficult to challenge the reasonableness of such a determination since this Court would be loathe to substitute its own judgment for that of the district court. United States v. Broxmeyer, 699 F.3d 265, 289 (2d Cir. 2012). But here, it is evident that the sentence imposed by the district court was driven primarily by its determination that a loss amount of $4,260.008.40 was attributable to the appellant; that this determination increased the base offense level by 18 levels, and that the sentence selected was based upon the inflated Guidelines range that resulted from that determination.

18

In sum, the district court's determination of the loss attributable to the appellant violated her Sixth Amendment rights. The sentence must therefore be vacated and the case remanded to the district court for resentencing.

## POINT II

THE DISTRICT COURT'S CALCULATION THAT A LOSS AMOUNT OF $4,260,008.40 WAS ATTRIBUTABLE TO THE APPELLANT'S OFFENSE WAS ERRONEOUS. ACCORDINGLY, THE SENTENCE WAS PROCEDURALLY UNREASONABLE.

As was noted in Point I herein, the appellant's sentence was primarily driven by the amount of loss that the district court attributed to her – $4,260,008.40, the same amount attributed to her husband Trudeau. As a result of that calculation, the appellant's offense level was increased by 18 levels, yielding a total offense level of 26, the starting point at which the district court determined her sentence. However, a review of the record reveals that the district court erred in calculating the amount of loss the appellant's offense caused. Due to that error, it cannot be concluded that the appellant's sentence was procedurally reasonable.

In calculating loss amount, a district court must "make a reasonable estimate of the loss, given the available information." United States v. Rutkoske, 506

F.3d 170, 178 (2d Cir. 2007). In reviewing a district court's determination of loss, this Court is obliged to "determine ... whether the trial court's method of calculating the amount of loss was legally acceptable." United States v. Turk, 626 F.3d 743, 748 (2d Cir. 2010), quoting United States v. Olis, 429 F.3d 540, 545 (5th Cir. 2005). In this case, regardless of the standard applied, it cannot be concluded that the loss amount was properly calculated.

In the first place, while it is may have been true that the appellant was aware that her husband Trudeau was engaging in fraudulent loan transactions during the time period covered by the substitute information, and that she assisted him in some of those transactions, she was never aware of the scope of his illegal activities. And in fact, as defense counsel pointed out in his presentence memorandum and at the sentencing proceeding, the appellant actually attempted to resist her husband's efforts to apply for several of the loans in question and urged him to return funds that he had obtained (A93-A94, A213-A215). Moreover, it appears that the district court failed to conduct a proper analysis of the relevant conduct for which the appellant was responsible.

Pursuant to U.S.S.G. § 1B1.3(a), a sentencing judge must determine the relevant conduct for which a defendant is responsible. Importantly, relevant conduct is defined as acts that occurred during the commission of the offense of conviction.

"The words 'relevant conduct' suggest more is required than mere temporal proximity, as the other conduct must be 'relevant' and it must occur 'during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense". United States v. Ahders, 622 F.3d 115, 122 (2d Cir. 2010), quoting U.S.S.G. § 1B1.3(a)(1)(A).  In a sentencing involving a conspiracy charge, relevant conduct includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken activity." id.  In making such a determination, there are two basic considerations – the scope of the jointly undertaken activity and reasonable foreseeability.  In United States v. Studley, 47 F.3d 569 (2d Cir. 1995), this Court held that a sentencing judge must make particularized findings as to both factors.  First, it must determine the scope of the criminal activity agreed upon by the defendant.  Second, if the sentencing judge finds that the scope of the criminal activity to which the defendant agreed was sufficiently broad to include the conduct in question, then the court must make a particularized finding as to whether the activity was foreseeable to the defendant.  id. at 573-575.

Applying the foregoing principles to this case, it cannot be concluded that the loss amount determined by the district court was properly attributed to the appellant.  For example, the $451,952 loss on the 88 Riverside Road property had no

apparent connection to the appellant. Indeed, it appears that the scheme involving this property was initiated and carried out by attorney Kriz and Trudeau without any apparent involvement by the appellant. Similarly, the $1,200,000 loss on the 35 Prospect Road property should not have been attributed to the appellant. As was noted in the PSR, the financing involving the purchase of 35 Prospect Road was initiated by Trudeau and Kriz who worked with Fred Stevens, Steve Merrick and Tom Preston in arranging the rather complex transaction. Simply put, there was no indication that the appellant understood the scope of the transactions involving this property or that the acts of Trudeau and Kriz were reasonably foreseeable to her.

Nor can it be concluded that the appellant could have reasonably foreseen that attorney Kriz would steal either $3,500,000 or $1,298,856 or any lesser sum from the IOLTA account he was required to maintain. As the government conceded (A124), the deposit slips that were used to deposit the money from Kriz's IOLTA were in Trudeau's handwriting and there was no indication that the appellant was aware of that transaction. And though it was alleged that the appellant had written a check which represented the cash out from her mother-in-law's refinancing, there was simply no proof that she was aware that the source of those funds was from Kriz's account. In short, there was no basis for the government's conclusory assertion that "it was reasonably foreseeable to the defendant that Kriz would defraud

other victims separately from her" (A124-A125).  Moreover, since Kriz testified at

Trudeau's trial that even Trudeau didn't know the details of his IOLTA thefts, and

that he had actually lost his clients' funds by investing and losing them in the stock

market, there was absolutely no basis for concluding that Kriz's thefts could qualify

as relevant conduct with respect to the appellant.

      Furthermore, it appears that the district court did not make a proper

determination of the scope of the criminal activity that the appellant agreed to jointly

undertake, as this Court required in <u>Studley</u>.  The record of the sentencing proceeding

discloses that the district court concluded, with ample justification, that the

appellant's husband Trudeau had masterminded and directed the offense at every turn

and that he had manipulated and "put ... [appellant] in the situation she's in today"

(A298).  But instead of making a reasoned effort to determine the scope of the

criminal activity that the appellant agreed to undertake, the district court simply found

that "[s]he was involved from the beginning with Huntington.  She's involved in the

applications to the banks and the mortgage companies for mortgages.  She's all over

everything and I found already .... At the end of the day, she's a participant.  She

doesn't have an insanity defense.  She doesn't have a mental incapacity defense"

(A219).  Suffice it to say that these findings fell short of fulfilling the district court's

duty to determine the scope of the appellant's agreement to further the purposes of

23

the conspiracy.  See United States v. Mellen, 393 F.3d 175, 183-84 (D.C. Cir. 2004) (distinguishing between what a conspirator knew and what he or she actually agreed to do further the conspiracy).

In short, the district court erred when it calculated the amount of loss to be attributed to the appellant.  Since this error resulted in a mistaken Guidelines calculation, the sentence was the product of procedural error.  United States v. Cavera, 550 F.3d 180, 190 (2d Cir. 2008) (en banc).  The sentence should therefore be vacated and the case remanded for resentencing.

## POINT III

THE SENTENCE OF 30 MONTHS' IMPRISONMENT WAS PROCEDURALLY AND SUBSTANTIVELY UNREASONABLE BECAUSE THE DISTRICT COURT FAILED TO PROPERLY CONSIDER THE APPELLANT'S EXTRAORDINARY FAMILY CIRCUMSTANCES.

At the time of her sentencing, the appellant was the mother of three daughters, ages nine years, five years and 18 months.  Unbeknownst to her at the time, she was pregnant with her fourth child, a daughter who was born one month ago.  Despite the fact that it was acknowledged by the district court and the government that it was her husband who had orchestrated all of the fraudulent

24

transactions; that it was her husband who had drawn her into and directed her in the commission of the offense; that the appellant had provided substantial assistance to the government, and that she was confronted with truly extraordinary family hardships, the district court sentenced her to a term of imprisonment of 30 months. It is submitted that the sentence imposed was procedurally and substantively unreasonable and should be vacated.

Reasonableness review has both substantive and procedural dimensions. United States v. Whitley, 503 F.3d 74, 76 (2d Cir. 2007). In reviewing for procedural reasonableness, this Court examines whether the district court (1) identified the incorrect Guidelines range, (2) treated the Guidelines as mandatory, (3) failed to consider the Guidelines along with the factors listed in 18 U.S.C. § 3553 (a), (4) selected a sentence based on clearly erroneous facts, or (5) failed to provide an adequately explanation for its sentence. Gall v. United States, 552 U.S. 38, 51 (2007).

Of course, a sentencing judge need not offer "robotic incantations" with regard to each factor that motivates a sentence. United States v. Fernandez, 443 F.3d 19, 30 (2d Cir. 2006). Nevertheless, "a judge must explain enough about the sentence for a reviewing court both to understand it and to assure itself that the judge considered the principles enunciated in federal statutes and the Guidelines." United

States v. Corsey, __ F.3d __, 2013 U.S. App. LEXIS 14897 (2d Cir. 2013), citing Rita v. United States, 551 U.S. 338, 357 (2007).  Accordingly, where the defendant presents an argument that is "not so weak as to not merit discussion", a district court should explain its reason for rejecting that argument.  United States v. Cunningham, 429 F.3d 673, 679 (7th Cir. 2005).  And where a district court fails to adequately address a claim with recognized merit, it is likely to have committed error.  id.  This is the error that the district court committed in this case.

In the district court, defense counsel sought a downward departure or variance pursuant to U.S.S.G. § 5H1.6 which provides that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted" but that a district court may impose a below-Guidelines sentence "once it finds that a defendant's family ties and responsibilities ... are so unusual that they may be characterized as extraordinary."  Prior to Booker, this Court recognized the validity of such departures where a defendant was "solely responsible for the upbringing of her three young children, including an infant, and of the young child of her institutionalized daughter", United States v. Johnson, 924 F.2d 124, 129-30 (2d Cir. 1992), where a defendant supported his wife, two daughters, grandmother and disabled father who relied on defendant to get out of his wheelchair, United States v. Alba, 933 F.2d 1117, 1122 (2d Cir. 1991), and where a defendant supported two

26

children and his wife, who spoke limited English, earned less than half of his income, United States v. Galante, 111 F.3d 1029, 1035 (2d Cir. 1997).

After Booker, which declared that the Guidelines were advisory, downward departures are somewhat less significant than they were previously. However, since sentencing judges are now required to consider the factors listed in 18 U.S.C. § 3553(a), which directs that a defendant's history and characteristics be weighed in determining the sentence to be imposed, judges may apply Guidelines departures by analogy when analyzing the statutory factors.    United States v. Miranda, 505 F.3d 785, 792 (7th Cir. 2007).   And since none of the factors in § 3553(a) need be extraordinary to merit consideration, it follows that a sentencing judge's discretion in considering a defendant's family circumstances is broader than it would be when determining the propriety of a downward departure.

Here, it appears that the district court misunderstood the hardship to the appellant's children and other family members that would result from her incarceration.  When the appellant's father addressed the district court, he attempted to explain the extraordinary difficulties that would arise if he assumed the responsibility of caring for his three young granddaughters.  Mr. Bliss stated that he was living temporarily in Wilton, Connecticut but regularly resided in North Carolina and was a CPA "committed to [his] clients ... partners and ... staff until April 15"

27

(A280), an indication that he would be preoccupied with his work, and therefore unable to care for the appellant's daughters at the beginning of every year until the annual income tax filing deadline. He explained further that if the appellant were imprisoned past September, 2013, he would have to return to his condominium in North Carolina and take his three granddaughters with him (A281). This move would necessarily require that the two older children be removed from the schools they had been attending. To compound the difficulties, Mr. Bliss stated that his condominium was a small "third story walk up that really doesn't have room for three small children" and that he would have to find more spacious "accommodations to take them to" and that he would also have to rely on the appellant's two brothers who lived three hours away from his home to help him take care of his granddaughters on weekends (A281).

        Despite Mr. Bliss's recitation of the serious hardships to the appellant's children that would result from her imprisonment, the district court denied the motion for a downward departure for extraordinary family circumstances and commented, "I understand that this is going to have enormous impact on Mrs. Bliss's children. There's no question in my mind about that. But that's the consequence of the conduct that she engaged in. And in many respects, she's blessed with the generous offer of her father to step in" (A288). These comments displayed little if any awareness of the

28

actual hardships that the appellant's daughters would suffer and her other family

members would experience as a result of a sentence of imprisonment.  As the United

States Court of Appeals for the Seventh Circuit observed in a similar case:

> The court's observation that Schroeder's criminal
> conduct was the cause of the alleged hardship to his
> daughter is an obvious and not dispositive one, since
> the culpability of a defendant who appears for
> sentencing is a given.  When a defendant presents an
> argument for a lower sentence based on extraordinary
> family circumstances, the relevant inquiry is the effect
> of the defendant's absence on his family members.
> *See e.g.,* United States v. Johnson, 964 F.2d 124, 129
> (2d Cir. 1992) ("The rationale for a downward
> departure here is not that [the defendant's] family
> circumstances decrease her culpability, but that we
> are reluctant to wreak extraordinary destruction on
> dependents who rely solely on the defendant for their
> upbringing.").  The defendant's responsibility for
> adverse effects of his incarceration on his family is
> not the determinative issue.  If it were, there would
> never be an occasion on which the court would be
> justified in invoking family circumstances to impose
> a below-guidelines sentence.  The court was required
> to consider Schroeder's family circumstances
> argument and provide an adequate analysis of how
> much weight, if any, it should command.

United States v. Schroeder, 536 F.3d 746, 756 (7th Cir. 2008).

Here, as in Schroeder, the district court failed to provide an adequate

analysis of the weight the appellant's extraordinary family circumstances argument

should command.  Moreover, it appears that the district court conflated its obligation

29

to consider the appellant's downward departure motion on that basis with its obligation to weigh that claim under 18 U.S.C. § 3553(a).  The record reveals that immediately prior to the imposition of sentence, the district court made only a passing reference to the appellant's claim, stating, "With respect to the argument about your family circumstances and the terrible consequences that will be visited upon your children, you know, I don't wish to do that by my sentence, Ms. Bliss, but unfortunately you did it by your conduct going back now several years in connection with Mr. Trudeau's fraud" (A302).  This comment, which echoed the district court's statements in Schroeder, and which the Seventh Circuit found to be an inadequate analysis of a significant mitigating factor, constituted procedural error.  Gall, 552 U.S. at 51.

Finally, the imposition of a sentence of 30 months' imprisonment was substantively unreasonable as well.  In reviewing substantive reasonableness, this Court determines "whether the length of the sentence is reasonable" focusing its attention on the district court's explanation of its sentence in light of the factors contained in 18 U.S.C. § 3553(a).  United States v. Sindima, 488 F.3d 81, 84 (2d Cir. 2007).  At the substantive stage of reasonableness review, an appellate court may consider whether a factor relied on by a sentencing judge can bear the weight assigned to it under the totality of the circumstances.  United States v. Cavera, 550

30

F.3d 180, 191 (2d Cir. 2008) (en banc).  Under this approach, reviewing courts "continue to patrol the boundaries of reasonableness".  id.

In this case, it is clear that the sentence imposed by the district court was driven, in large part, by deterrence, both specific and general.  And while this was certainly a valid § 3553(a) factor, the district court's application of it was flawed.  As noted, the district court and the government acknowledged that the appellant had been led into the offense by her husband who had masterminded and carried out all of the fraudulent transactions, using the appellant to help him to perpetrate his schemes. Indeed, the district court recognized that the appellant's husband was "the center of this fraud, driving it, being the leader of it" (A292) and that he was "a skillful manipulator" who "manipulated a lot of people" and was "very good at what he did" (A298).  But with the appellant's husband sentenced to a term of imprisonment of 188 months, there was little if any chance that the appellant would be manipulated into participating in any future crimes.  Under the circumstances, the deterrence factor simply did not bear the weight that the district court assigned to it.  Cavera, at 191.

At the same time the district court placed undue weight on the need for deterrence, it seemed to assign no weight on the hardships that the appellant's children would suffer as a result of their mother's imprisonment.  With their father imprisoned for almost 16 years, and their mother imprisoned for 30 months, the

31

appellant's three young daughters would be dependent on relatives with whom they had little previous contact and could not possibly tend to their emotional needs as their mother could.   And since the appellant recently gave birth to her fourth daughter, the hardships have only intensified.

After considering all of the applicable sentencing factors, a district court must impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing.   18 U.S.C. § 3553(a)(2).   This so-called "parsimony provision" represents the "overarching" command of the statute.   Kimbrough v. United States, 552 U.S. 85, 101 (2007).   Here, the sentence imposed runs counter to this provision.   The appellant's sentence should therefore be vacated and the case remanded for resentencing.

## CONCLUSION

For all of the reasons stated herein, the appellant's sentence should be vacated and the case remanded to the district court for resentencing.

Dated:       Bayside, New York
             October 15, 2013

Respectfully submitted,

\s\ RANDALL D. UNGER
Attorney for Defendant-Appellant
Heather Bliss
42-40 Bell Boulevard, Suite 302
Bayside, New York 11361
(718) 279-4500

33

<u>CERTIFICATION</u>

Pursuant to Rule 32 (a) (7) (B)

Randall D. Unger, Esq., counsel for defendant-appellant, certifies that the foregoing defendant-appellant's brief complies with the type-volume limitations set forth in FRAP 32 (a) (7) (B) in that it contains 7,108 words.

Dated:        Bayside, New York
              October 15, 2013

__\s_____
          RANDALL D. UNGER

SPECIAL APPENDIX

# TABLE OF CONTENTS

Page

Judgment ................................................................................ SPA1

Notice of Appeal ..................................................................... SPA5

Case 3:09-cr-00224-JCH   Document 117   Filed 02/15/13   Page 1 of 4

AO245b (USDC-CT Rev. 9/07)

UNITED STATES DISTRICT COURT
District of Connecticut

Page 1

| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
|---|---|
| v. | CASE NO. *3:09cr224 (JCH)*<br>USM NO: *17379-014* |
| Heather Bliss | |
| | *Rahul Kale*<br>Assistant United States Attorney |
| | *Andrew Bowman*<br>Defendant's Attorney |

**THE DEFENDANT:** pled guilty to count 1 of the Substitute Information.

Accordingly the defendant is adjudicated guilty of the following offense:

| Title & Section | Nature of Offense | Offense Concluded | Count |
|---|---|---|---|
| 18 U.S.C. section 371 | Conspiracy to Commit Wire Fraud | October 31, 2007 | 1 |

The following sentence is imposed pursuant to the Sentencing Reform Act of 1984. The sentence imposed is a non-guideline sentence based on the reasons provided to the court pursuant to Rule 32, Federal Rules of Criminal Procedure.

**IMPRISONMENT**

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total of 30 months.

**SUPERVISED RELEASE**

Upon release from imprisonment, the defendant shall be on supervised release for a total term of 3 years. The Mandatory and Standard Conditions of Supervised Release as attached, are imposed. In addition, the following Special Conditions are imposed:
  1. The defendant shall avoid all contact with any victim in the subject offenses of conviction.
  2. The defendant shall pay any restitution that is imposed by this judgment, payable immediately, at a rate of no less than $500.00 per month. The monthly payment schedule may be adjusted based on the defendant's ability to pay as determined by the Probation Office and approved by the court.
  3. The defendant shall not incur new credit card charges above $250.00 or open additional lines of credit without the prior permission of the Probation Office until the defendant's criminal debt obligation is paid. The defendant shall not add any new names to any lines of credit, shall not be added as a secondary card holder on another's line of credit, and shall provide the Probation Office with electronic access to any online management of any lines of credit, including lines of credit for businesses/LLC's that are owned, operated or otherwise associated with the defendant.
  4. The defendant shall close all other savings/checking accounts, transfer all assets into one main bank account and shall not add any new account holders to that account (the account may include the defendant's spouse if there are joint marital assets/expenses). The defendant shall provide the Probation Office with electronic "read only" access to any online management of the account. The defendant shall provide the final statement from each account that is closed to ensure that no funds are dissipated during the closing of existing accounts and opening of the single account.

AO245b (USDCASER&VL80)1:r-00224-JCH   Document 117   Filed 02/15/13   Page 2 of 4

Page 2

     5.   The defendant shall permit the Probation Office to monitor investment and retirement accounts, to include coordinating with the account administrator to notify the Probation Office of any activity on the account.

     6.   The defendant shall not encumber personal homes or investment properties without permission of the court, and shall not transfer, sell, give away, barter, or dissipate in any way any assets, including personal property (ie: motor vehicles, recreational vehicles) without the express permission of the Probation Office and notification to the court.

     7.   Upon request, the defendant shall submit a proposed budget (detailing expected income and expenses) to the Probation Office, after which the Probation Office shall communicate its approval to the defendant.  The defendant shall adhere to the approved budget and any deviations must be approved before incurring and paying the expense.  Any receipt of income or asset not anticipated by the approved budget shall be reported to the Probation Office within two days of the receipt of the income or asset, or within two days of the defendant's receipt of knowledge that such income or asset will be received, whichever comes sooner.  Such unanticipated income or asset can not be disposed of without prior permission of the Probation Office.

     8.   The defendant shall retain receipts for inspection, upon reasonable notice, any expenditures greater than $250.00.

     9.   The defendant shall not possess ammunition, a firearm or other dangerous weapon.

     10.   As directed by the Probation Office, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the Probation Office to make such notifications and to confirm the defendant's compliance with such notification requirement.

     11.   The defendant shall file timely tax returns and provide copies to the Probation Office within 15 days of filing.

**CRIMINAL MONETARY PENALTIES**
The defendant must pay the total criminal monetary penalties under the schedule of payments (as follows) or (as noted on the restitution order).

| | | |
|---|---|---|
| Special Assessment: | $100.00 | to be paid immediately |
| Restitution: | $38,700.00 | Order of Restitution will issue. |
| Fine | $12,500.00 | payable at a rate of $200/month beginning 30 days after release from imprisonment. |

It is further ordered that the defendant will notify the United States Attorney for this district within 30 days of any change of name, residence or mailing address until all fines, restitution, costs and special assessments imposed by this judgment, are paid.

AO245b (USDC-CNPA Rev. 13.) Judgment in a Criminal Case

Case 3:11-cr-00224-JCH   Document 117   Filed 02/15/13   Page 3 of 4

Page 3

Counts 1, 2 and 4 of the Indictment are dismissed on motion of the United States.

## JUDICIAL RECOMMENDATION(S) TO THE BUREAU OF PRISONS

The defendant shall be designated to the satellite camp facility at Danbury. **If not sooner designated, the defendant shall self surrender to the United States Marshal in New Haven for the District of Connecticut no sooner than 7/1/2013, but no later than noon on 7/17/2013.**

2/12/2013
Date of Imposition of Sentence

/s/Janet C. Hall
Janet C. Hall
United States District Judge
Date: 2/14/2013

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____, with a certified copy of this judgment.

Joseph P. Faughnan
United States Marshal

By _____
Deputy Marshal

CERTIFIED AS A TRUE COPY
ON THIS DATE _____
ROBERTA D. TABORA, Clerk
BY: _____
     Deputy Clerk

Case 3:09-cr-00224-JCH   Document 117   Filed 02/15/13   Page 4 of 4

Page 4

# CONDITIONS OF SUPERVISED RELEASE

In addition to the Standard Conditions listed below, the following indicated (■) Mandatory Conditions are imposed:

### MANDATORY CONDITIONS

■ (1)　The defendant shall not commit another federal, state or local offense;

■ (2)　The defendant shall not unlawfully possess a controlled substance;

☐ (3)　The defendant who is convicted for a domestic violence crime as defined in 18 U.S.C. section 3561(b) for the first time shall attend a public, private, or private non-profit offender rehabilitation program that has been approved by the court, in consultation with a State Coalition Against Domestic Violence or other appropriate experts, if an approved program is available within a 50-mile radius of the legal residence of the defendant;

☐ (4)　The defendant shall refrain from any unlawful use of a controlled substance and submit to one drug test within 15 days of release on supervised release and at least two periodic drug tests thereafter for use of a controlled substance;

☐ (5)　If a fine is imposed and has not been paid upon release to supervised release, the defendant shall adhere to an installment schedule to pay that fine;

■ (6)　The defendant shall (A) make restitution in accordance with 18 U.S.C. sections 2248, 2259, 2264, 2327, 3663, 3663A, and 3664; and (B) pay the assessment imposed in accordance with 18 U.S.C. section 3013;

☐ (7)　(A)　In a state in which the requirements of the Sex Offender Registration and Notification Act (see 42 U.S.C. §§ 16911 and 16913) do not apply, a defendant convicted of a sexual offense as described in 18 U.S.C. § 4042(c)(4) (Pub. L. 105-119, § 115(a)(8), Nov. 26, 1997) shall report the address where the defendant will reside and any subsequent change of residence to the probation officer responsible for supervision, and shall register as a sex offender in any State where the person resides, is employed, carries on a vocation, or is a student; or

　　　　(B)　In a state in which the requirements of Sex Offender Registration and Notification Act apply, a sex offender shall (i) register, and keep such registration current, where the offender resides, where the offender is an employee, and where the offender is a student, and for the initial registration, a sex offender also shall register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence; (ii) provide information required by 42 U.S.C. § 16914; and (iii) keep such registration current for the full registration period as set forth in 42 U.S.C. § 16915;

■ (8)　The defendant shall cooperate in the collection of a DNA sample from the defendant.

While on supervised release, the defendant shall also comply with all of the following Standard Conditions:

### STANDARD CONDITIONS

(1)　The defendant shall not leave the judicial district or other specified geographic area without the permission of the court or probation officer;

(2)　The defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

(3)　The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

(4)　The defendant shall support the defendant's dependents and meet other family responsibilities (including, but not limited to, complying with the terms of any court order or administrative process pursuant to the law of a state, the District of Columbia, or any other possession or territory of the United States requiring payments by the defendant for the support and maintenance of any child or of a child and the parent with whom the child is living);

(5)　The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;

(6)　The defendant shall notify the probation officer at least ten days prior to any change in residence or employment, or if such prior notification is not possible, then within five days after such change;

(7)　The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance, or any paraphernalia related to any controlled substance, except as prescribed by a physician;

(8)　The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered, or other places specified by the court;

(9)　The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

(10)　The defendant shall permit a probation officer to visit the defendant at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;

(11)　The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

(12)　The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

(13)　The defendant shall pay the special assessment imposed or adhere to a court-ordered installment schedule for the payment of the special assessment;

(14)　The defendant shall notify the probation officer of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay any unpaid amount of restitution, fines, or special assessments.

**The defendant shall report to the Probation Office in the district to which the defendant is released within 72 hours of release from the custody of the U.S. Bureau of Prisons. Upon a finding of a violation of supervised release, I understand that the court may (1) revoke supervision <u>and impose a term of imprisonment</u>, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.**

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.


(Signed) _____　　　_____
　　　　　**Defendant**　　　　　　　　　　　　　　**Date**


　　　　　_____　　　_____
　　　　　**U.S. Probation Officer/Designated Witness**　　**Date**

SPA5

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,         :

                    Plaintiff,    :

VS.                               :    DOCKET NO: 3:09-CR-00224(JCH)

HEATHER BLISS,                    :

                    Defendant     :    February 21, 2013

**<u>NOTICE OF APPEAL</u>**

Notice is hereby given that defendant Heather Bliss in the above-entitled case,

hereby appeals to the United States Court of Appeals for the Second Circuit from the

final judgment filed on 02/15/2013.

THE DEFENDANT,
HEATHER BLISS

BY _____

ANDREW B. BOWMAN
Fed. Bar No: ct00122
1804 Post Road East
Westport, CT 06880
(203) 259-0599
(203) 255-2570 (Fax)
e-mail: andrew@andrewbowmanlaw.com

1 of 18